1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

ROBIN R. CROW,                      )          NO. CV 12-10179 AGR
                                    )
            Plaintiff,              )
                                    )
      v.                            )
                                    )          **MEMORANDUM OPINION AND**
CAROLYN W. COLVIN,                  )          **ORDER**
Commissioner of Social Security,    )
                                    )
            Defendant.              )
_____)

Plaintiff Robin R. Crow filed this action on December 4, 2012.  (Dkt. No. 3.)
Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the
magistrate judge on December 11, 2012 and January 7, 2013.  (Dkt. Nos. 8, 11.)
On July 15, 2013, the parties filed a Joint Stipulation ("JS") that addressed the
disputed issues.  The court has taken the matter under submission without oral
argument.

Having reviewed the entire file, the court reverses the decision of the
Commissioner and remands this matter for proceedings consistent with this
opinion for the period beginning February 20, 2011.

1

**I.**

2

## PROCEDURAL BACKGROUND

3      On February 19, 2008, Crow filed applications for disability insurance

4   benefits and supplemental security income, alleging an onset date of April 21,

5   2007.  Administrative Record ("AR") 21, 134, 257-68.  The applications were

6   denied initially and on reconsideration.  AR 134, 129-30.  Crow requested a

7   hearing before an Administrative Law Judge ("ALJ").  AR 150.  On March 26,

8   2009, Crow appeared at the hearing without an attorney or representative.  AR

9   126.  The ALJ continued the hearing to give Crow an opportunity to hire an

10   attorney or representative.  *Id.*  On July 23, 2009, Crow appeared with an

11   attorney, and the ALJ conducted a hearing at which Crow and a vocational expert

12   ("VE") testified.  AR 106-23.  On August 11, 2009, the ALJ issued a decision

13   denying benefits.  AR 134-39.

14      On January 21, 2011, the Appeals Counsel granted Crow's request for

15   review of the decision, vacated the decision, and remanded the case for further

16   proceedings.  AR 141.  On remand, the ALJ was to:  (1) obtain additional

17   evidence concerning Crow's impairments; (2) give further consideration to the

18   treating and nontreating source opinions, and explain the weight given to such

19   opinion evidence; (3) further evaluate Crow's mental impairments; (4) evaluate

20   Crow's obesity; (5) evaluate other source opinion; and (6) if warranted, obtain

21   supplemental evidence from a VE to clarify the effect of the assessed limitations

22   on Crow's occupational base.  AR 142-43.  On August 2, 2011, a different ALJ

23   conducted the hearing on remand at which Crow, a medical expert ("ME"), and a

24   VE testified.  AR 42-105.  Additional medical evidence was admitted and made

25   part of the record.  AR 45, 580-713.  On September 22, 2011, the ALJ issued a

26   decision denying benefits.  AR 18-36.  On October 5, 2012, the Appeals Council

27   denied the request for review.  AR 1-5.  This action followed.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

## III.

## DISCUSSION

### A.  Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B.  The ALJ's Findings

The ALJ's findings are divided into the time periods before and after a February 20, 2011 motor vehicle accident.  The ALJ found that Crow met the insured status requirements through June 30, 2012.  AR 23.

3

The ALJ found that, from April 21, 2007 through February 19, 2011, Crow had the following severe impairments: obesity, borderline intellectual functioning, and major depressive disorder.  AR 24.  She had the residual functional capacity ("RFC") to perform a range of medium work.  AR 26.  She could exert 20 to 50 pounds of force occasionally, 10 to 20 pounds of force frequently, and up to 10 pounds of force constantly to move objects.  She could sit, stand and walk up to 6 hours in an 8-hour workday with normal breaks.  She could not climb ladders, ropes or scaffolds; could not balance; and could not be exposed to hazardous machinery, unprotected heights, or other high risk, hazardous or unsafe conditions.  Crow was limited to simple, routine and repetitive tasks in a low stress work environment (defined as work requiring no more than occasional changes in work setting, and not requiring unusual, very fast pace or production rate requirements) that did not require more than occasional interaction with the public or coworkers.  *Id.*  Crow was unable to perform any past relevant work, but she could perform jobs that existed in significant numbers in the national economy, such as surveillance system monitor; cleaner, industrial/janitorial; and cleaner, housekeeping.  AR 29-30.

During the period beginning February 20, 2011, Crow has the following severe impairments:  obesity; borderline intellectual functioning; major depressive disorder; a tibia/fibular fracture; dislocated left talus; and internally deranged right wrist.  AR 31.  Crow has the RFC to perform a range of light work.  *Id.*  She can exert 20 pounds of force occasionally and 10 pounds of force frequently to move objects, except that she can lift no more than 10 pounds with her dominant right hand and no more than 20 pounds bilaterally or with her left hand alone.  *Id.*  She can stand/walk up to 4 hours and sit up to 6 hours in an 8-hour workday with normal breaks.  She cannot climb ladders, ropes or scaffolds; balance; be exposed to hazardous machinery, unprotected heights or other high risk, hazardous or unsafe conditions; or have concentrated exposure to extreme

4

1    cold, extreme heat or extreme vibration.  She can occasionally climb ramps or

2    stairs; walk on uneven ground; stoop; kneel; crouch; crawl; and handle and finger

3    objects with her dominant right upper extremity.  She can perform simple, routine

4    and repetitive tasks in a low stress work environment (defined as work requiring

5    no more than occasional changes in work setting and no unusual, very fast pace

6    or production rate requirements) that requires only occasional interaction with the

7    public or coworkers.  AR 31-32.  Beginning February 20, 2011, Crow cannot

8    perform any past relevant work, but is able to perform a significant number of

9    jobs in the national economy such as surveillance system monitor and laboratory

10   sampler.  AR 34-35.

## C.  ALJ's Analysis of the Medical Evidence

### 1. Obesity

13   Crow contends the ALJ failed to properly evaluate obesity pursuant to

14   Social Security Ruling ("SSR") 02-01p,[1] which requires an assessment of her

15   ability to perform routine movement and necessary physical activity within the

16   work environment.

17   The ALJ found that obesity was one of Crow's severe impairments.  AR

18   24, 31.  "[Crow's] weight, including the impact on her ability to ambulate as well

19   as her other body systems, has been considered within the functional limitations

20   determined herein."  AR 24.  Crow has not pointed to any evidence in the record

21   of any functional limitations as a result of her obesity that the ALJ failed to

22   consider.  *See Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005).  The court in

23   *Burch* noted an ALJ "'will not make assumptions about the severity or functional

24   effects of obesity combined with other impairments.  Obesity in combination with

_____

[1]  Social Security rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

another impairment may or may not increase the severity or functional limitations of the other impairment.'" *Id.* at 682 (citation omitted).  Accordingly, an ALJ evaluates a case "'based on the information in the case record.'" *Id.* (citation and emphasis omitted).  Crow has not shown error.

### 2. Mental Capacity

Crow contends the ALJ mischaracterized the evidence of Crow's mental status evaluations and failed to mention her Global Assessment of Functioning ("GAF") score of 49.[2]  Crow also argues the ALJ improperly rejected the opinions of her treating psychiatrist, Dr. Jacobs.

#### a.  Mental Status Evaluations

The ALJ is not required to discuss every piece of evidence on record. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).  Rather, the ALJ need only explain why "'significant probative evidence has been rejected.'" *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (citation omitted).

The ALJ limited Crow to simple, routine and repetitive tasks in a low stress work environment (defined as work requiring no more than occasional changes in work setting, and not requiring unusual, very fast pace or production rate requirements) that did not require more than occasional interaction with the public or coworkers.  AR 26, 31-32.

The ALJ expressly considered the GAF scores of 26, 30, 45 and 55 in the record.  AR 28.  Crow argues that the ALJ did not consider the GAF score of 49 assessed by a social worker.  AR 568.  A social worker is not an acceptable medical source.  20 C.F.R. §§ 404.1513(a), (d), 416.913(a)(d).  Moreover, the GAF score of 49 falls within the range of 26-55 considered by the ALJ and

_____

[2]  A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000).

1    discounted as inconsistent with her longitudinal mental status evaluations.[3]  AR

2    28.  As the ALJ noted, Crow was hospitalized in April 22-27, 2007 with a

3    diagnosis of a brief psychotic disorder.  Her GAF ranged from 45 on admission to

4    55 at discharge.  AR 28, 573-74.  At discharge, she was stable, calm, coherent,

5    on medication and free of paranoia.  AR 574.  On April 1, 2008, the social worker

6    found that Crow's eye contact was normal, her speech was unimpaired, her

7    motor activity was calm and her interactional style was culturally appropriate and

8    guarded/suspicious.  Although Crow points out that her mood was dysphoric and

9    her affect was constricted, the social worker noted that Crow had no perceptual

10   or thought content disturbances.  Her associations were unimpaired, her

11   concentration was intact, her judgment was intact and her insight was adequate.

12   AR 567.  The ALJ's interpretation of the social worker's evaluation was eminently

13   rational.  *See Moncada*, 60 F.3d at 523.

14        One year later, on May 30, 2008, Dr. Riahinejad conducted a complete

15   psychological testing and evaluation.  AR 28, 516-22.  Dr. Riahinejad assessed

16   borderline intellectual functioning based on Crow's scores of 72-75 on the

17   Wechsler Adult Intelligence tests.  AR 519.  Crow was pleasant and cooperative,

18   and her thoughts appeared organized.  Her immediate memory, concentration

19   and attention span were fair.  AR 28, 518.  Dr. Riahinejad assessed a GAF score

20   of 60.  AR 520.  He opined that Crow was cable of understanding, remembering

21   and carrying out simple repetitive instructions.  He noted that her pace is "slightly

22   slow" and she "might have difficulty in fast-paced types of positions."  *Id.*

23   Although Crow argues the ALJ did not expressly repeat Dr. Riahinejad's

24   observations that Crow appeared "slightly sedated" and exhibited evidence of

25   psychomotor slowing and subdued affect, the ALJ adopted Dr. Riahinejad's

26   _____

27   [3]  *See  McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (citing 65 Fed. Reg. 50,745, 50,764-65 (Aug. 21, 2000)) ("[t]he Commissioner has determined the GAF scale 'does not have a direct correlation to the severity

28   requirements in [the Social Security Administration's] mental disorder listings.'").

1  functional limitation that Crow would have difficulty with fast paced work due to
2  her slow pace.  AR 26, 31-32, 520.  The ALJ excluded work that required
3  unusual, very fast pace of production rate requirements such as high hourly
4  quotas or constantly moving assembly lines.  AR 26, 31-32.

5          As the ALJ noted, Crow's IQ scores on May 20, 2011 were in the range of
6  borderline intellectual functioning.  AR 26, 688.  Dr. Izzi noted that Crow had
7  good perceptual motor integration functioning based on the Bender Gestalt Test.
8  The Trail-Making Test indicated a mild degree of impairment.  The achievement
9  tests indicated no learning disability.  Crow had 11th grade reading skills and 8th
10  grade math and spelling skills.  Crow had a deficit in short term visual memory.
11  AR 689.  Dr. Izzi opined that Crow could understand, remember and carry out
12  simple instructions, and had a moderate impairment in her ability to interact with
13  the public and coworkers.  AR 693-94.  The ALJ's RFC took these functional
14  limitations into account.

15          A mental status evaluation in March 2011 also noted that Crow had fair
16  memory, concentration and attention span.  Her mood was appropriate, and her
17  judgment, insight and impulse control were fair and appropriate.  AR 612.  Dr.
18  Mangasep assessed a GAF score of 60.  *Id.*

19          Crow has not shown that the ALJ erred in interpreting her mental status
20  evaluations.

21                  b.  Dr. Jacobs

22          An opinion of a treating physician is given more weight than the opinion of
23  non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To
24  reject an uncontradicted opinion of a medically acceptable treating source, an
25  ALJ must state clear and convincing reasons that are supported by substantial
26  evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When a
27  treating physician's opinion is contradicted by another doctor, "the ALJ may not
28  reject this opinion without providing specific and legitimate reasons supported by

1    substantial evidence in the record.  This can be done by setting out a detailed

2    and thorough summary of the facts and conflicting clinical evidence, stating his

3    interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and

4    quotation marks omitted).  "When there is conflicting medical evidence, the

5    Secretary must determine credibility and resolve the conflict." *Thomas v.*

6    *Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks

7    omitted).

8         Dr. Jacobs completed a Mental RFC Questionnaire dated April 14, 2009

9    ("Questionnaire"), a Claim for Disability Insurance Benefits – Doctor's Certificate,

10   dated February 13, 2009 ("Doctor's Certificate") and progress notes dated April

11   1, 2008 through March 18, 2009.  AR 545-71.

12        In the Questionnaire, Dr. Jacobs stated that he had seen Crow every one

13   to three months since April 1, 2008.  AR 546.  He diagnosed depressive disorder

14   NOS, anxiety disorder NOS and R/O delusional D/V.  He assessed a GAF score

15   of 47.  AR 546, 554.  Dr. Jacobs found that Crow was limited but satisfactory in

16   the areas of understanding, remembering and carrying out simple instructions.

17   AR 548.

18        Dr. Jacobs opined that Crow was unable to meet competitive standards in

19   the areas of: maintaining attention for two hour segments; sustaining an ordinary

20   routine without special supervision; working in coordination with or proximity to

21   others without being unduly distracted; completing a normal workday and

22   workweek without interruptions from psychologically based symptoms;

23   performing at a consistent pace without an unreasonable number and length of

24   rest periods; accepting instructions and responding appropriately to criticism from

25   supervisors; dealing with normal work stress; understanding, remembering and

26   carrying out detailed instructions; and maintaining socially appropriate behavior.

27   AR 548-49.

28

1    Dr. Jacobs found that Crow was seriously limited, but not precluded, in the

2    areas of remembering work-like procedures, maintaining regular attendance and

3    being punctual, making simple work-related decisions, asking simple questions

4    or requesting assistance, getting along with co-workers or peers without unduly

5    distracting them or exhibiting behavioral extremes, responding appropriately to

6    changes in a routine work setting, being aware of normal hazards and taking

7    appropriate precautions, setting realistic goals or making plans independently of

8    others, and interacting appropriately with the general public.  AR 548-49.

9    In response to a question asking for explanation and supporting clinical

10   findings for his limitations on unskilled work, Dr. Jacobs wrote:  "Recurrent

11   symptoms on job (i.e., depression, anxiety and paranoia) noticed by supervisor

12   and customer complaints."  AR 548.  In response to a similar question regarding

13   semiskilled and skilled work, Dr. Jacobs responded:  "[Crow] is too distracted by

14   symptoms and life stressors to effectively function within work environment."  AR

15   549.  Dr. Jacobs indicated Crow would be absent from work about four days per

16   month due to her impairments.  AR 550.

17   In the Doctor's Certificate, Dr. Jacobs indicated Crow was incapable of

18   performing her regular or customary work beginning on December 16, 2008.  AR

19   554.  Dr. Jacobs anticipated releasing Crow to return to her regular or customary

20   work on September 1, 2009.  *Id.*

21   The ALJ gave "some weight" to the Doctor's Certificate stating that Crow

22   was incapable of returning to her regular or customary work.  AR 29.  The ALJ

23   found that Crow could not perform any past relevant work.  AR 29, 34-35.

24   However, the ALJ rejected the Questionnaire because it "appears to have

25   been completed as an accommodation to the claimant and includes only

26   conclusions regarding functional limitations with the only rationale for those

27   conclusions being the claimant's subjective complaints."  AR 29.  The

28

questionnaire had "no probative value because the objective medical evidence does not support it." *Id.*

The ALJ's rejection of Dr. Jacobs' questionnaire is supported by substantial evidence.  In response to questions asking for explanation and supporting clinical findings, Dr. Jacobs did not cite any clinical testing or findings to support his limitations.  A progress note dated February 11, 2009, indicates that Crow reported losing two jobs due to customer complaints and stated her supervisor noticed her distress and recurrent panic attacks.  AR 557.  The ALJ could reasonably infer that Dr. Jacobs' rationale reflected Crow's representations to him.  An ALJ may draw reasonable inferences logically flowing from the record.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  An ALJ may reject a treating physician's opinion that is conclusory and inadequately supported by clinical findings.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  As discussed above, Dr. Jacobs' extreme limitations were not supported by the other objective mental health evidence in the record.  Crow has not shown error.

**3. Physical Capacity in the Period Beginning February 20, 2011**

As of February 2011, Crow was studying to become a pharmacy technician.  AR 591, 598.  While driving, Crow lost consciousness and drove into a pole at approximately 35 miles per hour.  AR 642.  Apparently, she was not wearing a seat belt.  AR 646.  She had a four-inch laceration with internal deformity in the right wrist.  She had an open fracture dislocation of the left ankle with bone exposed.  AR 643-44.  A few days later, she developed pain and swelling in the right ankle.  AR 624.  An MRI revealed no fractures and the assessment was right ankle sprain.  AR 622.  After discharge, Crow was briefly hospitalized again on March 26-27, 2011, after she developed pulmonary embolic disease in the right lower lob arteries.  AR 590.

1    For purposes of the benefits at issue, the term "disability" means the

2    inability to engage in any substantial gainful activity by reason of any medically

3    determinable physical or mental impairment "which can be expected to result in

4    death or which has lasted or can be expected to last for a continuous period of

5    not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509;

6    *Barnhart v. Walton*, 535 U.S. 212, 217-22, 122 S. Ct. 1265, 152 L. Ed. 2d 330

7    (2002).

8    The claimant bears the burden of establishing the duration requirement.

9    *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995).  In *Roberts*, the claimant

10   presented evidence that she met a listed impairment for seven months as of the

11   date of the hearing before the ALJ.  The court noted that judicial review is limited

12   to the record as it existed before the ALJ when he rendered his decision.  If the

13   claimant in fact met the listed impairment for the required twelve months, the

14   claimant was free to file a new claim.  *Id.* at 182-83 & n. 3.

15   An examining physician's opinion constitutes substantial evidence when,

16   as here, it is based on independent clinical findings.  *Orn*, 495 F.3d at 632.

17   "'The opinion of a nonexamining physician cannot by itself constitute

18   substantial evidence that justifies the rejection of the opinion of either an

19   examining physician or a treating physician.'"  *Ryan v. Comm'r*, 528 F.3d 1194,

20   1202 (9th Cir. 2008) (citation omitted) (emphasis omitted).  However, a

21   non-examining physician's opinion may serve as substantial evidence when it is

22   supported by other evidence in the record and is consistent with it.  *Andrews v.*

23   *Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

24   The ALJ gave great weight to the opinion of Dr. Taylor, an examining

25   physician, and stated that she "assessed functional limitations that are essentially

26   the same as those included in the residual functional capacity assessment

27   herein."  AR 34.  This statement is incorrect in one material respect.

28

Dr. Taylor conducted an internal medicine evaluation on May 24, 2011.
AR 33, 675.  Dr. Taylor observed that Crow ambulates slowly using a walker and
wearing an orthopedic shoe and brace over her left foot and ankle.  AR 677-78.
Crow could not perform a tandem walk and could not stand unassisted without a
walker.  AR 678.  Dr. Taylor opined that Crow needs a walker at all times for
support due to the recent fracture of the left foot.  AR 679.  Crow could lift and
carry no more than 10 pounds occasionally and frequently; walk and stand no
more than 4 hours out of an 8-hour day; occasionally bend, stoop and pull; and
occasionally could perform gross handling and fine fingering with the right hand.
Crow could not climb, kneel, balance, or crawl; operate moving machinery or
drive due to seizures; or be exposed to vibration due to joint pain.  AR 33, 679.
Dr. Taylor suggested that Crow be reevaluated in one year since it was "unclear
what her future recovery will be."[4]  AR 678.

Dr. Taylor's opinion that Crow needs a walker is not included in the ALJ's
RFC assessment.  Although the Commissioner argues that the ALJ must have
given more weight to the opinion of the medical expert, Dr. Jensen, the ALJ's
decision actually states that Dr. Taylor's assessment is "essentially the same" as
the ALJ's RFC, which is not the case.[5]  AR 34.

Remand is appropriate for the ALJ to reevaluate Dr. Taylor's opinion that
Crow cannot ambulate on her own.

[4]  As of June 11, 2011, Crow's treatment records indicate she was still using a walker.  AR 702.  At the hearing on August 2, 2011, Crow testified that she was told not to walk at all until a week before the hearing.  AR 48.  After she walks around for about half an hour, her feet "swell up like footballs."  AR 47-48. She walks dragging her left foot and without putting weight on it.  AR 51.

[5]  Crow also argues that Dr. Jensen's opinion was ambiguous because he testified that he did not see impairments that would extend "more than 12 months."  AR 57.  When asked whether the impairments in ambulation would still be present "after 12 months," Dr. Jensen responded:  "That would still be very, very difficult to opine, Your Honor."  AR 58.

1

### D. **Credibility**

2 Crow contends the ALJ failed to provide specific, clear and convincing reasons

3 to reject her subjective testimony.

4 "To determine whether a claimant's testimony regarding subjective pain or

5 symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter*

6 *v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must

7 determine whether the claimant has presented objective medical evidence of an

8 underlying impairment 'which could reasonably be expected to produce the pain

9 or other symptoms alleged.'"  *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344

10 (9th Cir. 1991) (en banc)).  The ALJ found that Crow's medically determinable

11 impairments could reasonably be expected to produce some of the alleged

12 symptoms.  AR 27, 32.

13 "Second, if the claimant meets this first test, and there is no evidence of

14 malingering, the ALJ can reject the claimant's testimony about the severity of her

15 symptoms only by offering specific, clear and convincing reasons for doing so."

16 *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted).  "In making

17 a credibility determination, the ALJ 'must specifically identify what testimony is

18 credible and what testimony undermines the claimant's complaints[.]'"  *Greger v.*

19 *Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

20 In weighing credibility, the ALJ may consider factors including:  the nature,

21 location, onset, duration, frequency, radiation, and intensity of any pain;

22 precipitating and aggravating factors (e.g., movement, activity, environmental

23 conditions); type, dosage, effectiveness, and adverse side effects of any pain

24 medication; treatment, other than medication, for relief of pain; functional

25 restrictions; the claimant's daily activities; and "ordinary techniques of credibility

26 evaluation."  *Bunnell*, 947 F.2d at 346 (citing SSR 88-13) (quotation marks

27 omitted).  The ALJ may consider (a) inconsistencies or discrepancies in a

28 claimant's statements; (b) inconsistencies between a claimant's statements and

1    activities; (c) exaggerated complaints; and (d) an unexplained failure to seek

2    treatment.  *Thomas*, 278 F.3d at 958-59.

3         The ALJ found that Crow's statements concerning the intensity,

4    persistence and limiting effects of his symptoms were not credible to the extent

5    they were inconsistent with the RFC.  AR 27, 32.  The ALJ relied primarily on two

6    reasons:  (1) inconsistencies with Crow's daily activities; and (2) lack of

7    supporting objective evidence.  AR 27, 29, 32, 34.

8         The ALJ's credibility finding is not supported by substantial evidence

9    during the period beginning February 20, 2011.  An ALJ may consider the

10   claimant's daily activities as one factor in weighing credibility.  *Tommasetti v.*

11   *Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  The ALJ found that, during the

12   period beginning  February 20, 2011, Crow "has engaged in a somewhat normal

13   level of daily activity and interaction, . . . including cooking and bathing."  AR 32.

14   The ALJ found that the physical and mental capabilities and social interactions

15   required in order to perform Crow's daily activities were the same as those

16   necessary for obtaining and maintaining employment.  *Id.*  This finding is

17   unsupported.  At the August 2, 2011 hearing, as discussed above, Crow testified

18   that she was told by doctors not to walk until just before the hearing.  As of the

19   hearing date, Crow drags her left foot without putting weight on it, and she can

20   make it from the bedroom to the bathroom.  AR 51.  After she walks around for

21   about half an hour, her feet "swell up like footballs" and she waits until the next

22   day for the swelling to go down. AR 47-48.  She was told not to stand on her foot

23   and cannot do so for two hours.  AR 76.  She lost her driver's license due to her

24   seizure history.  AR 63.  She is unable to finish her training as a pharmacy

25   technician due to her injuries from the car accident, and she has exceeded the

26   four-month leave of absence allowed by the school.  AR 72.  Crow testified that

27   she  "can take a shower and clean up after [herself]."  AR 78.  A couple of days a

28   week, she "might make some scrambled eggs or something," but she can no

longer cook or clean.  Her stepmom and nephew do that.  *Id.*  This level of activity does not support a finding that she has the ability to perform full-time work.  *See Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (claimant's limited activities did not constitute convincing evidence that he could function regularly in a work setting).

The remaining reason for discounting Crow's subjective testimony – lack of supporting objective medical evidence – cannot form the sole basis for discounting pain testimony.  *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").  On remand, the ALJ should reevaluate Crow's credibility during the period beginning February 20, 2011.

### E.  <u>Vocational Expert Testimony</u>

Crow contends the ALJ erred in relying on the VE's testimony because the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT").[6]

"[A]n ALJ may [not] rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1234 (9th Cir. 2009).  SSR 00-4p requires the ALJ to "first determine whether a conflict exists" between the DOT and the vocational expert's testimony, and "then determine whether the [VE's] explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]."  *Massachi*, 486 F.3d at 1153.

In evaluating the VE's explanation for the conflict, "an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record

---

[6]  The DOT raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

1   contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at

2   1435.  The ALJ's explanation is satisfactory if the ALJ's factual findings support a

3   deviation from the DOT and "persuasive testimony of available job categories"

4   matches "the specific requirements of a designated occupation with the specific

5   abilities and limitations of the claimant."  *Id*. at 1435.  Remand may not be

6   necessary if the procedural error is harmless, i.e., when there is no conflict or if

7   the VE provided sufficient support for her conclusion to justify any potential

8   conflicts.  *Massachi*, 486 F.3d at 1154 n.19.

9         The VE testified that a person with Crow's RFC after the February 20,

10   2011 accident could not perform Crow's past relevant work, but could perform

11   the jobs of surveillance system monitor and laboratory sampler.  AR 35, 92, 95,

12   98.  The VE testified that her testimony did not conflict with the DOT except when

13   she testified about work as it was actually performed.  AR 104.

14         Because this matter is being remanded so that the ALJ can reconsider the

15   physical RFC in light of Dr. Taylor's opinion and Crow's testimony, the ALJ may

16   reconsider the vocational expert testimony as well.

17                                     **IV.**

18                                    **ORDER**

19         IT IS HEREBY ORDERED that the decision of the Commissioner is

20   reversed and the matter remanded for further proceedings consistent with this

21   opinion for the period beginning February 20, 2011.

22         IT IS FURTHER ORDERED that the Clerk of the Court serve copies of

23   this Order and the Judgment herein on all parties or their counsel.

24

25

26   DATED: January 10, 2014

27                                     ALICIA G. ROSENBERG
                                       United States Magistrate Judge

28

                                      17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28